UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Tony Hobson,<br><br>    Plaintiff<br><br>v.<br><br>AWP Currier, et al.,<br><br>    Defendants | Case No.: 2:22-cv-02088-JAD-VCF<br><br>**Order Screening First Amended Complaint**<br><br>[ECF No. 5] |

Plaintiff Tony Hobson brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when corrections officers repeatedly and unprofessionally searched his cell while he was incarcerated at Nevada's Southern Desert Correctional Center (SDCC). On February 2, 2022, I dismissed all claims in Hobson's original complaint with leave to amend,[1] and Hobson timely filed a first amended complaint (FAC).[2] Because Hobson applies to proceed *in forma pauperis*,[3] I screen his FAC under 28 U.S.C. § 1915A. Having done so, I find that Hobson has pled a colorable Eighth Amendment claim about harassing cell searches, so I allow that claim to proceed. But I find that Hobson has not pled a colorable First Amendment retaliation claim, so I give him until August 16, 2023, to file a second amended complaint if he can state true facts to support the elements he's missing.

---

[1] ECF No. 3.
[2] ECF No. 5.
[3] ECF No. 1.

**Background**

A.  **Plaintiff's factual allegations**[4]

Hobson alleges that, on June 2, 2022, around 11:00 p.m. the defendants "aggressively" entered his cell while he was asleep and told him not to move. Hobson was placed on the wall, handcuffed, and walked down the hall to the dayroom. Hobson asked Ramsmusen if he could watch his cell being searched as administrative regulations allowed, but Ramsmusen ignored the question, told Hobson to have a seat, and "wanded" him with a metal detector. A few minutes later, Hobson's cellmate and the prisoners from a neighboring cell were also placed in the dayroom.

All defendants then "ransacked both rooms." Hobson heard "property being slammed around" during the 45 minutes to an hour that he was in the dayroom. Then Hobson was ordered into the supply closet where he was strip-searched by Reese and Boone. Hobson asked Reese why he wasn't allowed to watch the search, and Reese responded, "You're in prison[;] you do not have any rights[;] get used to it." Hobson's cellmate and the prisoners from a neighboring cell were similarly strip-searched.

When Hobson was returned to his cell, he "realized real[ly] quickly the destruction of [his] property and the mess that was made of [his] cell." Hobson asked the corrections officers to document the destruction with a camera, but they didn't have one, and they refused to give Hobson an emergency grievance. Only one mattress was left in the cell, so Hobson told Reese that they needed another. Reese responded by slamming the cell door.[5]

---

[4] This is merely a summary of the allegations in the FAC, *see* ECF No. 5 at 5–12, and should not be construed as findings of fact.

[5] I explained in my order screening Hobson's original complaint why allegations that he was denied a mattress for a single evening do not state a colorable Eighth Amendment claim about prison conditions. ECF No. 3 at 10–11.

One day later, Harper showed up at Hobson's cell door around 9:00 "mean mugging" Hobson and pointing a flashlight in his face "for a long period of time." Hobson told Harper to leave him alone.

Sometime between February and March 2022, Hobson and his cell were searched by four corrections officers at about midnight or 1:00 a.m. "in the same manner" as the June 2, 2022, search. Hobson's cell was "ransacked[,]" and his property left "in dis[a]ray." Hobson was in a different cell but on the same wing during this search. Hobson saw the officers searching and "destroying" his cell but does not remember all their names except Castenada.

Castenada refused to answer Hobson's question why he and his cell were being searched. No contraband was found during the search, and Hobson wasn't written up. Hobson didn't file a grievance about this incident because he was "in fear of retaliation based on the fact that if it was possible for [four corrections officers] to just enter [his] cell that late with no problem then what else might they be capable of."

Sometime between March and April 2022 around "1:30ish" while Hobson and a coworker were in his cell talking, investigator Ruiz barged in, strip-searched them, and searched Hobson's cell after placing him in the dayroom. Hobson asked why he and his cell were being searched, and Ruiz responded that he "knew he would have caught [Hobson's] coworker with contraband if he would have [come] 10 minutes sooner." Hobson asked Ruiz if that was the truth or if he was just harassing him; Ruiz's "response was to smirk and walk off while shaking his head." Hobson's "cell wasn't messed up too bad but nonetheless it was out of order." Hobson didn't file a grievance but realized that he "was being targeted."

Hobson filed an informal grievance after the June 2nd search. During the grievance process, corrections officer Asher documented that search's aftermath with a camera. After

Hobson filed his grievance, a memorandum was circulated through the prison by the lieutenants and wardens instructing corrections officers not to perform late-night searches.

About one week after the June 2nd search, "another CO" knocked on Hobson's door, announcing yet another cell search. Hobson said that his cell had just been searched and to leave him alone. The corrections officer made Hobson leave his cell and searched it. One week later, Ruiz strip-searched Hobson's cellmate when he was on the way to work, saying that Hobson was the reason for the search and that the cell mate was "the fucking reason I can't catch him [']cause you['re] helping him move all the contraband around back in forth from laundry to your cell." Hobson's cellmate denied the accusation, saying "you've searched laundry and [our] cell multiple times and you keep harassing us[.]" Ruiz responded that he would keep searching until he caught Hobson.

Two weeks later, Hobson's cell was searched two more times by Harris and another corrections officer. Hobson told Harris to put his cell on the list noting it had been searched and that no contraband had been found. Hobson also told Harris the searches were "direct retaliation by NDOC staff and a clear violation of" his rights.

**B.      Plaintiff's causes of action**

Based on these events, Hobson sues Harper, Reese, Aries, Fentenas, Lyons, Ramsmusen, Boone, and Brown.[6] I liberally construe the FAC as bringing claims based on two different theories of liability: (1) First Amendment retaliation and (2) Eighth Amendment harassing cell searches. Hobson seeks monetary and injunctive relief.[7]

---

[6] ECF No. 5 at 1–4.

[7] *Id.* at 15.

4

**Discussion**

**A.     Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[8] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[9] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[10]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[11] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[12] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[13] but a plaintiff must provide more

---

[8] *See* 28 U.S.C. § 1915A(a).

[9] *See id.* at § 1915A(b)(1)(2).

[10] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[11] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[12] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[13] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

than mere labels and conclusions.[14] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[15] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]

**B.  Analysis of Hobson's claims**

    ***1.  Hobson fails to state a First Amendment retaliation claim.***

Prisoners have a First Amendment right to file prison grievances and pursue civil-rights litigation in the courts—"and to be free from retaliation for doing so."[17] A retaliation claim in the prison context has five elements.[18] "First, the plaintiff must allege that the retaliated-against conduct is protected."[19] Filing or submitting a grievance, complaint, or lawsuit about prison conditions or alleged constitutional violations is protected conduct.[20] The form that an inmate's complaint takes—"even if verbal"—"is of no constitutional significance, and threats to sue fall within the purview of the constitutionally protected right to file grievances."[21]

---

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[16] *Id.*

[17] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[18] *Watison*, 668 F.3d at 1114.

[19] *Id.*

[20] *Entler v. Gregorie*, 872 F.3d 1031, 1039 (9th Cir. 2017).

[21] *Id.*

Second, the plaintiff must allege that "the defendant took adverse action against [him]."[22] "'The mere threat of harm can be an adverse action.'"[23] The third factor requires the plaintiff to "allege a causal connection between the adverse action and the protected conduct."[24] Allegations "of a chronology of events from which retaliation can be inferred is sufficient" at the screening stage.[25]

"Fourth, the plaintiff must allege that the 'official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'"[26] "A plaintiff who fails to allege a chilling effect may still state a claim if he alleges [that] he suffered some other harm that is more than minimal."[27] The fact "[t]hat the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim" at the pleading stage.[28]

And the fifth factor requires the plaintiff to allege "'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution.'"[29] A plaintiff can sufficiently plead "this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary or capricious, or that they were unnecessary to the maintenance of order in the institution."[30]

---

[22] *Watison*, 668 F.3d at 1114.
[23] *Id.* (brackets and emphasis omitted) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)).
[24] *Id.*
[25] *Id.*
[26] *Id.* (quoting *Robinson*, 408 F.3d at 568).
[27] *Id.* (brackets and quotation marks omitted) (quoting *Brodheim*, 584 F.3d at 1269 and *Robinson*, 408 F.3d at 568 n.11).
[28] *Id.*
[29] *Id.* (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).
[30] *Id.* (internal quotation omitted).

Hobson fails to state a colorable First Amendment retaliation claim. He alleges that his cell was searched three times in June 2022 after he filed a grievance about the June 2nd search. But Hobson does not allege that these searches were unprofessional or otherwise caused him more than minimal harm. Nor does he plead facts that the corrections officers who performed the searches—Harris and two other unknown corrections officers, including a "rookie"—acted *because* he engaged in protected conduct like filing grievances.

The allegation that Harper "mean mugg[ed]" and shined a flashlight in Hobson's face after the June 2nd search does not constitute an adverse action, and Hobson does not allege facts that Harper acted because Hobson engaged in protected conduct like filing a grievance. Finally, Hobson does not allege facts that the first destructive search, which happened in February or March 2022, was conducted because he engaged in protected conduct like filing grievances. This is Hobson's first attempt to plead a retaliation claim, and it does not yet appear that he cannot state additional facts to state a colorable claim. So I dismiss Hobson's First Amendment retaliation claim without prejudice and with leave to amend it.

> **2.     *Hobson arguably states an Eighth Amendment claim based on cell searches.***

The Supreme Court held in *Hudson v. Palmer* that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."[31] But "[t]he Eighth Amendment protects prisoners from [cell] searches conducted only for 'calculated harassment.'"[32] Conduct that is "obdurate or wanton and resulting in an unnecessary infliction of pain" violates the Eighth Amendment.[33]

---

[31] *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).
[32] *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989) (quoting *Hudson*, 468 U.S. at 530).
[33] *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)).

Hobson alleges that his cell was searched six times by different groups of corrections officers in a span of four to five months.  The first and third searches were unprofessional because they happened late at night or early in the morning, and Hobson's cell was left in disarray and his property was destroyed.  The second search was conducted because inspector Ruiz suspected that Hudson and his coworker were moving contraband into or around the prison, possibly with help from Hobson's cellmate who worked in the prison laundry.  But the searches continued and intensified in frequency despite the fact that no search of Hobson, his cell, his cellmate, or the prison laundry had turned up any contraband.  And prison officials circulated a memorandum instructing corrections officers not to conduct late-night searches after Hobson filed a grievance about the third search.

The allegations of the FAC arguably state that the cell searches were conducted without justification and calculated to harass Hobson.  Accordingly, the Eighth Amendment claim about harassing cell searches can proceed against Reese, Aries, Fentenas, Lyons, Ramsmusen, Boone, Brown, Castenada, Harris, and Ruiz.[34]

## C.     Leave to amend

Because it appears that Hobson could cure the deficiencies of his First Amendment retaliation claim, I grant him leave to amend to attempt to replead that claim.  If Hobson chooses to amend, he must plead true facts to show that defendants took adverse action against him because he engaged in protected conduct like filing grievances and either he suffered harm that is more than minimal because of the conduct or the conduct would chill a person of ordinary firmness from engaging in protected conduct.  If Hobson chooses to file a second amended

---

[34] Although Hobson does not include Castenada, Harris, and Ruiz among the defendants listed in the FAC, *see* ECF No. 5 at 1–4, I construe the factual allegations to state an Eighth Amendment claim about harassing cell searches against those individuals.

complaint, he is advised that an amended complaint replaces the original complaint, so it must be complete in itself.[35]  This means that Hobson's amended complaint must contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit, including the claim that I allowed to proceed in this order.  Hobson must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be titled "Second Amended Complaint."  He must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights.  **And he must file the amended complaint by August 16, 2023.**

### Conclusion

IT IS THEREFORE ORDERED that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

IT IS FURTHER ORDERED that:

- The First Amendment retaliation claim is DISMISSED with leave to amend by August 16, 2023; and
- The Eighth Amendment claim about harassing cell searches MAY PROCEED.

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to ADD** Castenada, Harris, and Ruiz to the docket as defendants.

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to SEND** plaintiff the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of

---

[35] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

his first amended complaint (ECF No. 5).  If plaintiff chooses to file an amended complaint, he must use the approved form and will title it "Second Amended Complaint."  The amended complaint will be screened in a separate screening order, and **the screening process will take many months.  If plaintiff does not file an amended complaint by August 16, 2023, this action will proceed immediately on only the Eighth Amendment claim about harassing cell searches.**

Dated: July 16, 2023

_____
U.S. District Judge