UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Tony Hobson,<br><br>                Plaintiff,<br>vs.<br><br>CO Harper, et al.,<br><br>                Defendants. | Case No. 2:22-cv-02088-JAD-MDC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO SEAL and DENYING PLAINTIFF'S MOTION TO COMPEL |

Pending before the me is the plaintiff's *Motion to Compel* (ECF No. 57) ("Motion") and the parties' briefs (ECF Nos. 71, 73, 75) in response to my 04/22/25 Order (ECF No. 67) regarding defendants' efforts to preserve items responsive to plaintiff's discovery request. Defendants have also filed a *Motion to Seal* (ECF No. 72) certain exhibits to their responsive brief (ECF No. 71). I have considered all briefs related to the Motion and in response to my 4/22/25 Order and, for the reasons below: (a) I DENY plaintiff's Motion; (2) GRANT defendants' *Motion to Seal* (ECF No. 72); and (3) while I find defendants negligently failed to preserve video footage, I find they are not guilty of spoliation because such footage is not responsive to plaintiff's discovery requests or relevant.

**DISCUSSION**

**I.     FACTS**

    **A.     Background**

This is a civil action under 42 U.S.C. § 1983 arising out of an alleged violation of plaintiff's First and Eighth Amendment rights. *01/31/24 Screening Order, ECF No. 11; Second Amended Complaint, ECF No. 7*. Plaintiff's two claims principally arise from a June 2, 2022, search of plaintiff's cell by defendants, which plaintiff alleges resulted in the destruction and loss of plaintiff's property. *01/31/24 Screening Order, ECF No. 11 at 2-3*. Plaintiff claims defendants violated his First Amendment by retaliating against him after he filed a grievance complaining about the late-night and destructive nature of defendants' June 2, 2022, search. *Id. at 8*. Plaintiff thus alleges that defendants responded to his

grievance by conducting more late-night cell searches that continued until at least August 2023. *Id. at pp. 4, 9.* Plaintiff also claims that defendants conducted these searches solely to harass him, in violation of Eighth Amendment rights. *Id. at 11.*

### B. Discovery At Issue

Plaintiff's Motion concerns his requests for certain emails, video, and photographs per his *Fourth Request for Production of Documents* ("Requests") dated 11-13-24. *Motion at "Exhibit C", ECF No. 57.* By his Requests, plaintiff seeks the following items from Defendants that are at issue in his Motion:

> 1) "Photographs taken and emailed by Sgt Asher on 6-3-22 check (NOTIS)(employee file) all emails sent by Asher to Mrs McCoy and Mrs Sandy."
> …
> 3) "Video footage from inside and outside of laundry on 6-3-22 to 6-30-22 and video footage from Unit 4 rotunda, and C wing on 1-1-22 to 6-22-22."
> 4) "Any emails sent through (NOTIS) from Investigator Ruiz, Sgt Kelly, Lt Groover pertaining to Investigation on 1-1-22 to 6-2-22."
> 5) "Any emails from Mrs McCoy to Asher or vise[sic] versa in (NOTIS) pertaining to photos taken of my room on 6-3-22."
> 6) "All emails from Attorney general Rudolf Moses D'Silvia regarding questions asked to IT Eric Danielson, Mrs. McCoy, Mrs Asher, Warden Portillo and any other person that was emailed during discovery pertaining to discovery (Answers and Questions)- Emails…."

*Motion, ECF No. 57 at "Exhibit C."*

The parties have conducted several meet-and-confer sessions. Ultimately, defendants claim that, after completing several searches, no responsive emails (not subject to a claim of privilege), video, photographs were located. *ECF No. 59 at 2,4.* Plaintiff does not believe that defendants do not have responsive emails, photographs, or video footage and filed his Motion (ECF No. 57).

Plaintiff argues that defendants operate and maintain surveillance camaras throughout the corrections institute housing him that capture continuous video recordings, including near the cell where the alleged June 2, 2022, search and subsequent searches occurred. *ECF No. 57.* Plaintiff further argues that defendants save footage from the surveillance camaras. *Id.* As an example, plaintiff states that

defendants recently presented him with surveillance camara footage to reprimand him. *Id.* Defendants acknowledge that their cameras operate on a loop recording system that preserves surveillance footage for a period of time before it is automatically recorded over. *See ECF No. 71 at 6*. Plaintiff further contends that he personally observed "Sergeant Asher" take multiple photographs of his cell after the June 2, 2022, incident. *Id*. at p. 8.

After reviewing the parties' initial briefs in connection with plaintiff's Motion, I entered my 04/22/25 Order (ECF No. 67) requesting the parties to submit additional briefing in order to determine whether there is anything to compel or whether spoliation of evidence may have occurred regarding the requested video or photographs. *Id.* In my order, I directed defendants to file detailed affidavits or declarations (specifically from Sergeant Asher) articulating their efforts to preserve the photographs and video requested by plaintiff or clarifying their existence. Defendants complied with my 04/22/25 Order and filed supplemental brief, with supporting declarations, including a declaration by Sergeant Asher. *ECF No. 71*.

## II.    DEFEDANTS DO NOT HAVE RESPONSIVE DOCUMENTS

### A.    Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." *See* FRCP 26(b)(1). Courts have "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Logically, however, "[a] party cannot be compelled to produce documents that it insists do not exist." *Lux v. Buchanan*, 2024 WL 1598805, at *2 (D. Nev. Apr. 12, 2024) (quoting *Acosta v. Wellfleet Comm's, LLC*, 2018 WL 664779, at *7 (D. Nev. Feb. 1, 2018)).

### B.    Defendants Do Not Have Responsive Photographs, Emails or Video

Defendants have sufficiently shown to my satisfaction that no photographs exist in response to plaintiff's request. Sergeant Asher declares that she has no recollection of being asked to take the photos alleged by plaintiff, taking such photos, or sending such photos to anyone within the prison.

*ECF No. 71-1 at ¶22.* Sergeant Asher further declares that it was not within the scope of her job duties to take photos of offender's cells after their cells had been searched. *Id.* Thus, I am satisfied that defendants do not possess any photographs responsive to plaintiff's request.

Defendants have also shown to my satisfaction that they have conducted a reasonable search and that they did not locate any (non-privileged[1]) emails responsive to plaintiff's request. *See ECF No. 59 at pp. 3, 4, 12.* Finally, Defendants claim that no potentially responsive surveillance video footage exists because it was likely deleted due to the general operation of the video recording system. *ECF No. 71.*

Because I cannot compel the production of documents and things that do not exist (*Lux*, 2024 WL 1598805, at *2), I DENY plaintiff's MOTION.

## III.    DEFENDANTS ARE NOT GUILTY OF SPOLIATION

### A.    General Legal Framework

The existence of potentially responsive documents or information often triggers the issue of whether a party took reasonable measures to preserve such discovery. The duty to preserve relevant evidence is one of the most basic, well-established, and widely accepted litigation tenets. *See Aiello v. Kroger Co.*, No. 2:08-CV-01729-HDM-RJJ, 2010 WL 3522259, at *2 (D. Nev. Sept. 1, 2010). It is well developed that the duty to preserve evidence is trigged when a party has "some notice that the evidence is potentially relevant to… reasonably foreseeable litigation." *Anderson v. Wal-Mart Stores, Inc.*, 2011 WL 4621286, at *3 (D. Nev. Oct. 3, 2011) (citing *United States v. $40,955.00 In U.S. Currency*, 554 F.3d 752, 758 (9th Cir.2009) (other citations omitted). The notice component is a low,

---

[1] I considered defendants' privilege and work product objections to the production of communications between them and their counsel regarding this action and find such privilege applies. *See Ryan Inv. Corp. v. Pedregal de Cabo San Lucas,* 2009 WL 5114077, at 3 (N.D. Cal. 2009) ("counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log"). Courts have discretion in controlling discovery, including the application of privileges. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)(broad discretion to control discovery); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.,* 157 F.R.D. 691, 699 (D.Nev.1994)(discretion whether privileges apply).

4

objective standard "that asks not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Soule v. P.F. Chang's China Bistro, Inc.,* 2020 WL 959245, at *3 (D. Nev. Feb. 26, 2020) (citation omitted). Ultimately, the "court has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

Once a party is on notice to preserve, Federal Rule of Civil Procedure 37(e) requires that party to take reasonable steps to preserve potentially relevant information, including electronically stored information or "ESI." *Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ. P. 37(e)*. Reasonable steps may generally include suspending or adjusting a parties retention policy. "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents….The scope of the duty to preserve extends to electronic documents, such as emails and back-up tapes." *Cottle-Banks v. Cox Commc'ns, Inc.*, No. 10-CV-2133-GPC WVG, 2013 WL 2244333, at *13 (S.D. Cal. May 21, 2013) (citations and internal quotations omitted).

> A. **Defendants Did Not Make Reasonable Efforts To Preserve Surveillance Video Footage**
>
> i. **The Kite Process**

Per defendants' prison policy, offenders are required to submit a written documents called a "kite" to raise any issues to the attention of prison staff. *ECF No. 73-1 at ¶¶17-29.* Kites are submitted through the offender's unit mailbox and then processed and delivered through the prison's mailroom. *Id.* Before an inmate may submit a kite into the mailbox it must be signed by the unit officer. *Id.* The time to process, deliver, review, and respond to a kite can be lengthy.

The mailroom is closed on Saturdays, Sundays, and federal and state holidays. *ECF No. 73-1 at ¶29.* Thus, kites submitted on Fridays are not processed by mailroom staff until "at least the following Monday." *Id.* Once an inmate has completed and submitted a kite in the mailbox, it can take

anywhere from three to ten days for the kite to be delivered to the prison staff member to whom the kite was addressed. *Id. at ¶29.* It then takes an additional undisclosed amount of time for prison staff to go through kites received. *Id.* Kites addressed to Associate Wardens generally take longer due to the volume of kites they generally receive. *Id. at ¶45.*

### ii. Plaintiff's Kites Gave Notice to Defendants To Preserve Video

Plaintiff submitted several kites to defendants giving them notice to preserve surveillance video footage. Plaintiff presented two kites dated June 3, 2022, one addressed to Warden Dreesen and the other to Warden Hutching, in which he requested that defendants keep all camera footage regarding this June 2, 2022, cell search. *ECF Nos. 75 at p.12; ECF no. 1-1 at pp.46, 48.* Plaintiff's June 3, 2022, kites further stated that he intended to file a civil suit and would need the video footage for discovery. *Id.* While Associate Warden Portillo proposes that plaintiff's kite to Warden Dreesen (ECF No. 1-1) may not have been mailed out because it is missing the unit officer's signature (ECF No. 73-1 at ¶46), he does not dispute that plaintiff's June 3, 2022, kite to Warden Hutching (ECF No. 75 at p. 12, ECF No. 1-1 at p. 48) was signed and actually mailed out.

Plaintiff has also presented two additional kites mis-dated "May 3, 2023" (ECF No. 1-1 at pp. 47, 49) which plaintiff refers to the June 2, 2022, cell search incident and makes almost identical requests to preserve video footage for his intended civil suit. These two additional kites are signed by the unit officer, with one of the officers expressly acknowledging receipt of the kite on June 3, 2022 (ECF No. 1-1 at p. 49).

In sum, because plaintiff submitted his kites to the mailbox on June 3, 2022, a Friday, defendants did not eventually process and review his kites until after video footage had been automatically erased and taped over as the result of the regular camera system operations (which are redacted at ECF No. 71-1, paragraphs 37-44, but I reviewed via the unredacted Declaration submitted for my in camara review).

### iii. Defendants Did Not Place A Litigation Hold

Defendants claim that no potentially responsive surveillance video footage exists because it was likely deleted by operation of their video recording system. *ECF No. 71*. Defendants separately filed, under seal, for *in camera* review, a declaration by Associate Warden Manuel Portillo ("Portillo Declaration") in which he discusses defendants' video recording system, why any potentially responsive footage was automatically erased before the defendants could preserve footage per their retention policies, and why erased footage was not relevant. Defendants contend the information about their video recording system, camera location and capture footage are sensitive and confidential, and disclosure could pose a serious security risk to the safety and security of staff and inmates if such information were revealed to the public. *ECF No. 71*. As I discuss more fully below, I find that defendants have shown cause to submit a redacted version of the Portillo Declaration under seal and an unredacted versions *ex parte* for *in camera review*. In light of these restrictions requested by defendants, my discussion and analysis regarding defendants' preservation efforts and relevancy of erased footage are limited to protect the safety and security of staff and inmates.

Defendants do not have potentially responsive surveillance video because they did not suspend the automatic deletion of video footage feature in their video recording system after receiving plaintiff's notice/kite to preserve. Once a party is on notice of potential litigation, it must suspend its destruction policies or operations "and put in place a 'litigation hold' to ensure the preservation of relevant document." *Zubulake v. UBS Warburg LLC* ("*Zubulake IV*"), 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Defendants argue that the time from when plaintiff submitted his kites to the time the kites could have been reviewed (and a litigation hold put in place preserving footage) was longer than the period of time that video footage is kept then automatically erased by the recording system. *ECF No. 71-1*, ¶¶37-44 (redacted). While defendants explain why video was erased, they do not show how they complied with their duty to preserve. I find that defendants' timeline in this case is not reasonable and that defendants failed to meet their preservation duties.

The plaintiff submitted kites (which is the most common method for a prisoner to raise an issue with staff, *ECF No. 71-1*, ¶13) immediately a day after the June 2, 2022, cell search to give defendants notice to preserve certain video footage. The delay in reviewing plaintiff's kites given the intervening weekend and processing and review times in relation to the time video footage is automatically erased is not reasonable. It did not give sufficient time to review plaintiff's kite and place a litigation hold to retrieve and preserve relevant footage before the footage was automatically erased. *ECF No. 71-1*, ¶33.

### B.  DEFENDANTS, HOWEVER, ARE NOT GUILTY OF SPOLIATION

Courts have inherent authority to sanction parties for spoliation of evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). "Spoliation of evidence is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citing *Hernandez v. Garcetti*, 68 Cal. App. 4th 675, 680 (Ct. App. 1998)). "To be actionable, the spoliation of evidence must damage the right of a party to bring an action." *Ingham v. United States,* 167 F.3d 1240, 1246 (9th Cir. 1999). Spoliation occurs when the following elements are present: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." *Golia-Huffman v. Food,* 2023 U.S. Dist. LEXIS 179872, at *5 (D. Nev. Aug. 8, 2023).

I find that the first element is satisfied. Defendants solely controlled the video surveillance system at issue (*see ECF No. 71*) and plaintiff's kites (ECF No. 75 at p. 12 and ECF No. 1-1 at pp. 47, 48, 49) gave defendants express notice that the requested video footage would be relevant to plaintiff's anticipated litigation, triggering defendants' duty to preserve. As to the second element, I find that defendants' failure to preserve was negligent. However, I find that the third element is not present. I have reviewed and considered the information and arguments stated in the parties' briefs relative to the Motion and my 04/22/25 Order and I find that the erased footage was not relevant to the plaintiff's

claims nor responsive to his discovery requests. Therefore, I conclude that defendants are not guilty of spoliation. My determination is without prejudice.

### i. The Erased Footage Was Not Relevant or Responsive To Plaintiff's Discovery

As discussed above, the principal event giving rise to plaintiff's claims is defendants' June 2, 2022, search of plaintiff's cell. Plaintiff's claims are premised on the allegation that defendants conducted subsequent destructive cell searches through August 2023 solely to harass him in retaliation because plaintiff filed a grievance to that June 2, 2022, search. *01/31/24 Screening Order at p. 9, ECF No. 11*. Defendants do not appear to dispute that the June 2, 2022, search occurred or that they conducted subsequent searches of plaintiff's cell through August 2023[2]. *See e.g., ECF No. 71-1 at ¶9*. At issue is whether the searches after were done solely to harass plaintiff, destroy his property, and without justification. *Id.* Plaintiff, however, does not request video footage of his cell being searched at any relevant time. Instead, Plaintiff requests footage from between January 1, 2022, and June 30, 2022, for various locations outside of his cell, including the laundry facility, the Unit 4 rotunda, and the C-wing in general. *Motion, ECF No. 3 at "Exhibit C," Request No. 3*.

Moreover, the unredacted Portillo Declaration that I reviewed *in camera* sufficiently demonstrates that no relevant footage was erased as the result of the video system's automatic erase and record-over feature. *ECF No. 71-1 at ¶¶50-54 (redacted)*. Therefore, defendants are not guilty of spoliation. *See Asfaw v. Wal-Mart Stores, Inc.,* No. 2:19-cv-01292-GMN-NJK, 2021 U.S. Dist. LEXIS 95014, at *6 (D. Nev. May 19, 2021) (sanctionable spoliation occurs only when lost evidence is relevant); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) ("The deletion of irrelevant evidence does not support a spoliation claim.")

### IV. DEFENDANTS' MOTION TO SEAL AND FOR IN CAMERA REVIEW IS GRANTED

---

[2] If defendants dispute the alleged searches at issue were conducted at all, spoliation may be an issue because erased video footage may be relevant to show searches were conducted.

  Defendants moved to seal (ECF No. 72) a redacted version of the Portillo Declaration and submitted in camera the unredacted version. It is well established in the Ninth Circuit that there is a strong presumption of public access to judicial records. *See Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Sealing is warranted upon a showing of "good cause" where, as here, the sealing relates to a "discovery motion unrelated to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097–98 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1179–80 (lower, good cause standard applies to discovery motions). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Defendants request to seal the Portillo Declaration (ECF No. 73) because the declaration contains information about defendants' security system that could pose a security risk if made available to the public. I find that defendants' have established good cause to seal the Portillo Declaration and that the public's right of access will not be prejudiced under the circumstances. Therefore, I GRANT defendants' Motion to Seal (ECF No. 72).

  Defendants have also submitted to the Court for *in camera* review an unredacted version of the Portillo Declaration, which means that the document was not filed or served upon the plaintiff. While parties are generally required file and serve their adversaries and file documents, submission of documents in *in camera* has been allowed by the Courts to review highly sensitive information. For example, our Local Rule IA 10-4 expressly provides for *in camera* submissions. "[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court. *United States v. Zolin*, 491 U.S. 554, 572, 109 S. Ct. 2619, 2631 (1989). However, there must be a sufficient evidentiary showing that to support that an *in-camera* review is appropriate or necessary. *Id.*, 491 U.S. at 564, 109 S. Ct. at 2627.

  Pursuant to the defendants' request, I have carefully reviewed the unredacted Portillo Declaration submitted *in camera*. Associate Warden Portillo identifies certain information about

defendants' security camera system, including locations, capabilities, and operations. According to Associate Warden Portillo, the disclosure of such information would compromise the security and safety of prison staff and offenders. Such conclusion is not novel or difficult to accept. Other courts have recognized the importance of maintaining prison surveillance camera operations in secrecy. *See e.g., Florer v. Schrum,* No. C11-5135 BHS/KLS, 2012 WL 2995071, at *2 (W.D. Wash. July 23, 2012) ("It is a significant advantage to have inmates uncertain as to what is being monitored, what is recorded, and what is in the field of view. Inmates will often use 'blind spots' (locations that have infrequent staff presence and no electronic surveillance) to commit acts of violence and purveying contraband."). I am therefore persuaded that review and consideration of the unredacted Portillo Declaration is appropriate.

### V.  CONCLUSION and ORDER

For the foregoing reasons,

**IT IS ORDED that:**

(1) Plaintiff's *Motion to Compel* (ECF No. 57) is **DENIED**; and

(2) Defendants' *Motion to Seal* (ECF No. 72) is **GRANTED**.

DATED: July 9, 2025.

IT IS SO ORDERED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge